IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARK W. RASMUSSEN, RECEIVER FOR ARISEBANK, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD SMITH, JR., and KURT F. MATTHEW, JR., <br><br> Defendants. | § § § § § § § § § § § Civil Action No. 3:18-cv-01034-M |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 21). The Motion is **GRANTED** as to Defendant Kurt F. Matthew, Jr. and **DENIED** as moot as to Defendant Richard Smith, Jr.

**I.     Background**

In this case, Plaintiff, the Court-appointed receiver, sued Defendants to recover funds for the Estate of AriseBank and its affiliates (the "Receivership Estate") stemming from AriseBank's cryptocurrency payment toward the purchase of a nonexistent bank. (ECF No. 1 ¶¶ 1–3).

AriseBank was a startup venture aiming to provide cryptocurrency and banking services. (ECF No. 23 at 28–30; *see also* ECF No. 22 at 3). AriseBank raised funds primarily by selling its own cryptocurrency, called "PIVX coins." (ECF No. 23 at 28–30). In December 2017, AriseBank CEO Jared Rice and Defendant Smith began discussing AriseBank's potential purchase of a bank from Defendant Matthew, who allegedly told Smith he owned a bank. (*Id.* at 101, 105). Matthew now states he has never owned a bank. (*Id.*) On or about December 13, 2017, Rice and Smith signed a term sheet outlining the "preliminary terms and conditions" of the

bank purchase (the "Term Sheet") for a price of at least $12 million.[1]  (*Id.* at 17–19).  Matthew, the purported owner of the bank for sale, did not sign the Term Sheet.  (*Id.* at 19).  The Term Sheet did not obligate either Smith or Rice to do anything, and both have stated that they did not view it as binding.  (*Id.* at 70–71, 92–93).

On or about January 10, 2018, Rice, himself or through one of the entities in the Receivership Estate, transferred 95,000 PIVX coins to Smith as a 10% "due diligence deposit" on the bank purchase (the "Coin Transfer").  (*See id.* at 21, 72; *see also* ECF No. 22 at 6–7).  AriseBank had an estimated $4.3 million in assets at the time of the Coin Transfer.  (ECF No. 23 at 4–5).

The 95,000 PIVX coins were worth an estimated $1.3 million at the time of the Coin Transfer.  (*Id.* at 4, 63–64, 72).[2]  After converting some of the coins to cash, Smith transferred $123,000 to Matthew as a 1% "good faith deposit" on the purchase.  (*Id.* at 8, 26, 75–80).  Defendants allege in their response to this Motion that this sum was also for Matthew's "consulting / investing advice," and reference the Term Sheet, but the Term Sheet provides no evidence of this.  (*See* ECF No. 26 at 2; *see also* ECF No. 23 at 17–19).  Defendants have stated that they intended the $123,000 as a 1% deposit on the purchase price and calculated it as such.  (*See id.* at 61–62, 75–76).  Matthew has stated he knew the $123,000 came from AriseBank and Rice as partial payment for the purchase of a bank he did not own.  (*Id.* at 107).

---

[1] The intended purchase price of the bank depends on the interpretation of the Term Sheet's "$12million [sic] EUR" as either 12 million euros (approximately $14 million) or $12 million.  (ECF No. 23 at 17).
[2] Defendants allege that Smith converted the 95,000 PIVX coins for the "then-value of $200,000," but this is a misstatement of Smith's deposition testimony.  When asked if the market aggregator's estimated value of the 95,000 PIVX coins of $1 million "sound[ed] right," Smith agreed.  The potential confusion stems from Smith's statement that he only got "close to $200,000" when he converted *some* of the coins to dollars.  (ECF No. 23 at 62, 64).

Smith alleges that the Coin Transfer was also for the purchase of his "high frequency trading" software, as described in the Term Sheet, but Smith did not deliver software while AriseBank was operating or even before Plaintiff had informed Defendants of the receivership and requested the return of the funds from the Coin Transfer. (*Id.* at 7, 17, 36, 46–47, 66). Plaintiff states that he has been unable to locate any software in the Receivership Estate's assets. (*Id.* at 7). Rice agreed with the characterization of the software as "a side benefit" to "acquiring a bank," and when asked if he cared about the software, he said, "No." (*Id.* at 90). Smith stated that he advertised a license to use the software for "$10 million a year," but that he has not had any paying customers. (*Id.* at 67).

As receiver, Plaintiff seeks the return to the Receivership Estate of the Coin Transfer, and moves for summary judgment on all of his claims: unjust enrichment, conversion, and fraudulent transfer. (ECF No. 21). Plaintiff also seeks the award of prejudgment and postjudgment interest, costs and attorney's fees. (*Id.* at 2).

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is material "if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). A factual dispute is "genuine if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997). The Court must resolve all disputed factual controversies in favor of the non-moving party, "but only if both parties have introduced evidence showing that an actual controversy exists." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see*

*also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citation omitted).

**III.     Analysis**

Plaintiff moves for summary judgment on his claim of constructive fraud under the Texas Uniform Fraudulent Transfer Act. As this Court has stated, constructive fraudulent transfer is a fraudulent transfer without there needing to be intent to defraud. *E. Poultry Distribs., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3, 2001) (Lynn, J., presiding), *aff'd*, *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019). To establish constructive fraud, a plaintiff must plead facts demonstrating: "(1) a lack of reasonably equivalent value for the transfer; and (2) the transferor was financially vulnerable or insolvent at the time of the transaction." *Id.* at 120; *see also* Tex. Bus. & Com. Code § 24.005(a)(2).

**A. AriseBank Did Not Receive Reasonably Equivalent Value for the Coin Transfer**

On or about January 10, 2018, Rice, for AriseBank, transferred an estimated $1.3 million in PIVX coins to Smith as a "due diligence deposit" on AriseBank's intended purchase of a bank. (*See* ECF No. 23 at 4, 63–64, 72). However, the "bank" did not exist. (*Id.* at 101). Defendants argue that the Term Sheet provided value through "unperformed promises," but there is no agreement by AriseBank to pay anything, and none by Smith to sell anything. (*See id.* at 17–19; *see also* ECF No. 26 at 4–5). Rice and Smith acknowledged they did not view the Term Sheet as binding, and Matthew did not even sign it. (ECF No. 23 at 19, 70–71, 92–93).

Defendants cite *Janvey v. Golf Channel, Inc.* as support for their argument that "the value was the intended purchase of the bank, company, and trading access." (ECF No. 26 at 5). In *Janvey*, the federal court affirmed the state court's finding that creditors received "objective value" for the Ponzi scheme operator's purchase of advertising services from a golf network,

4

because had it not done so, "the [advertising] services would have been available to another buyer at market rates." *Janvey v. Golf Channel, Inc.*, 834 F.3d 570, 572 (5th Cir. 2016). Thus, the creditors received an "economic benefit." *Id.*

Here, AriseBank's creditors did not receive any economic benefit. The bank did not exist, so it would not "have been available to another buyer at market rates." Even if it had existed, Smith, who neither alleged that he owned the bank nor that he had the power to sell it, did not promise to sell it to AriseBank. The software was of undetermined value, since Smith never had any customers; Rice stated he saw it as a "side benefit" of the purchase; and Smith did not deliver software before AriseBank ceased operations. (ECF No. 23 at 7, 17, 36, 46–47, 66–67). Thus, there is no genuine dispute that AriseBank did not receive reasonably equivalent value for the Coin Transfer.

### B. AriseBank Was Financially Vulnerable at the Time of the Coin Transfer

A debtor is financially vulnerable when it engages in "a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," *or* when it "intended to incur . . . debts beyond the debtor's ability to pay as they became due." *See* Tex. Bus. & Com. Code §§ 24.005(a)(2)(A), (B). Here, AriseBank was financially vulnerable on both grounds. The Coin Transfer was a "due diligence deposit" on AriseBank's intended purchase of a bank and software for at least $12 million, but AriseBank only had an estimated $4.3 million in assets. (*See* ECF No. 23 at 4–5, 18, 21, 72). Defendants offer no evidence of a different sum or from which a reasonable trier of fact could conclude that AriseBank had any reasonable expectation of raising the funds to pay the purchase price. AriseBank thus had both "unreasonably small" assets in relation to the transaction, and no apparent ability to pay the full price of the purchase "as [it] became due." *See* Tex. Bus. & Com.

Code §§ 24.005(a)(2)(A), (B). Thus, there is no genuine dispute that AriseBank was financially vulnerable at the time of the Coin Transfer, and summary judgment is therefore appropriate on Plaintiff's fraudulent transfer claim. Because Plaintiff's unjust enrichment and conversion claims also seek the return of the $123,000, the Court need not address those claims.

### C. Plaintiff May Recover From Matthew, the Subsequent Transferee

Upon establishing constructive fraud, a creditor may avoid the transfer and recover the value of the asset at the time of transfer from "any subsequent transferee other than a good faith transferee who took for value . . . ." *See* Tex. Bus. & Com. Code §§ 24.009(b)(2), (c)(1). Here, Matthew was not a good faith transferee because he knew the $123,000 he received came from AriseBank as partial payment for the purchase of a bank he did not own. (ECF No. 23 at 107; *see also* ECF No. 26 at 2, ECF No. 23 at 17–19, 61–62, 75–76). Matthew thus could not have provided any value either. (*Id.* at 26, 75–80, 101–04). Defendants allege that Matthew provided "consulting / investing advice," but the Term Sheet provides no evidence of this. Thus, Matthew is not "a good faith transferee who took for value," and Plaintiff may recover from Matthew as the subsequent transferee.

### D. Prejudgment Interest

A court may award prejudgment interest on fraudulent transfers from the date adversary proceedings are instituted to "compensate[ ] the estate for the time it was without use of the transferred funds." *In re Tex. Gen. Petroleum Corp.*, 52 F.3d 1330, 1339–40 (5th Cir. 1995). The purpose of prejudgment interest is to "make a plaintiff whole." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 488 (5th Cir. 2000). Because this suit has been pending since April 24, 2018, the Court finds that an award of prejudgment interest is appropriate.

Because Plaintiff brought his fraudulent transfer claim under Texas law, the Texas prejudgment interest rate applies. *See, e.g., Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991); *see also In re Tex. Gen. Petroleum Corp.*, 52 F.3d at 1339. Under Texas law, prejudgment interest is normally calculated at the prime rate published by the Board of Governors of the Federal Reserve System. Tex. Fin. Code § 304.003(c). If that rate is less than five percent, prejudgment interest is instead calculated at five percent per annum. Because the current prime rate is less than five percent, *see* Federal Reserve Statistical Release, H.15 Selected Interest Rates, http://www.federalreserve.gov/releases/h15/current/default.htm (last visited January 8, 2020), the Court applies a five percent interest rate. The record presents no basis for a lower rate or a reduction in the prejudgment interest amount. *See, e.g., Tow v. Speer*, No. H11-3700, 2015 WL 1058080, at *14–15 (S.D. Tex. Mar. 10, 2015).

### E. Postjudgment Interest

A court may also award postjudgment interest. *See Williams v. Trader Pub. Co.*, 218 F.3d 481, 488 (5th Cir. 2000) ("A district court has discretion to impose a pre and post-judgment interest award to make a plaintiff whole"). "An award of postjudgment interest is governed by 28 U.S.C. § 1961." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–57 (5th Cir. 2013). Postjudgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield," as published by the Board of Governors of the Federal Reserve System. *See* 28 U.S.C. § 1961(a). The weekly average 1-year constant maturity Treasury yield is 1.56%. *See* Federal Reserve Statistical Release, H.15 Selected Interest Rates, http://www.federalreserve.gov/releases/h15/current/default.htm (last visited January 8, 2020). Thus, the Court applies an interest rate of 1.56% per annum.

### F. Costs and Attorney's Fees

The Texas Uniform Fraudulent Transfer Act authorizes courts to "award costs and reasonable attorney's fees as are equitable and just." Tex. Bus. & Com. Code § 24.013. "There is ample case law supporting such an award when the plaintiff has proven fraudulent transfers." *In re Ritz*, 567 B.R. 715, 771 (Bankr. S.D. Tex. April 19, 2017); *see also Walker v. Anderson*, 232 S.W.3d 899, 919–20 (Tex. App.—Dallas 2007, no pet.). Here, the Court finds that the circumstances of fraudulent transfer support awarding Plaintiff costs and reasonable attorney's fees.

### IV. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 21) is **GRANTED** as to Defendant Matthew and **DENIED** as moot as to Defendant Smith.

Matthew is **ORDERED** to return to Plaintiff the sum of $123,000, plus prejudgment interest at a rate of five percent per annum from April 24, 2018, until the date of judgment, postjudgment interest at a rate of 1.56% per annum from the date of judgment until the date of payment, costs of court and reasonable attorney's fees. By February 8, 2020, Plaintiff shall submit evidence of his claim for reasonable attorney's fees, with any supporting documentation. The Court will enter a separate judgment.

**SO ORDERED**.

January 8, 2020.

_____
BARBARA M. G. LYNN
CHIEF JUDGE